JS-6    O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FUHU INC., | ) | Case No. CV 15-04447 DDP (JCx) |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| WISTRON CORPORATION; WISTRON INFOCOMM TECHNOLOGY (AMERICA) CORPORATION, | ) ) ) ) | [Dkt, 12] |
| Defendants. | ) ) ) | |

**I.  Background**

   A.  Factual History

   Fuhu, Inc. ("Fuhu") is a designer, seller, and innovator of consumer products and services for children. (Complaint, ¶ 11.) Fuhu's products include tablets (mobile touch-based computers). (Id. at ¶ 12.)  In early 2012, Fuhu partnered with Keen High Technologies Co., Ltd. ("Keen High") to manufacture the "nabi 2" tablet. (Id. at ¶ 17.)  On May 1, 2012, Fuhu and Keen High entered into an agreement that forbade Keen High from subcontracting manufacturing obligations without Fuhu's prior approval and

obligated Keen High to provide full Return Merchandise Authorization ("RMA") services, including handling of all tablet returns for warranty replacement, refurbishment, or repair. (Id. at ¶¶ 17-19; Ex. A, §§ 2.5, 8.3.)

On May 10, 2012, Fuhu signed a distribution agreement ("2012 Distribution Agreement") with D&H Manufacturing Company ("D&H"). The distribution agreement named D&H the non-exclusive, independent nabi 2 distributor in the United States, Canada, and its territories for one-year, with an automatic renewal each year thereafter. (RJN, Ex. 1, 11.)

Later in 2012, Wistron Corporation and Wistron Infocomm Technology (America) Corporation (collectively "Wistron"), subcontracted with Keen High to produce nabi 2 tablets. (Complaint, ¶ 21.)  Fuhu did not approve the Keen High-Wistron subcontracting agreement, and alleges that the agreement violated the May 1, 2012 manufacturing agreement between Fuhu and Keen High. (Id.)  Fuhu further alleges Wistron and Keen High overproduced nabi 2 tablets without Fuhu's authorization, resulting in an inventory of over 500,000 nabi 2 tablets. (Id. at ¶¶ 22-23.)

In April of 2013, Fuhu and Wistron entered into an oral agreement that Fuhu would purchase the excess nabi 2 inventory. (Id. at ¶ 25.)  As part of that agreement, Fuhu alleges Wistron agreed to provide the same full RMA support that Keen High had provided under the contract with Fuhu. (Id.)

Fuhu later planned to release a new nabi tablet, the "DreamTab."  Notwithstanding Keen High's alleged breach of the nabi 2 manufacturing agreement, Fuhu contracted with Keen High to produce a limited number of Dreamtab units. (Id. at ¶¶ 27, 29.)

2

Fuhu alleges the DreamTab manufacturing agreement, like the nabi 2 agreement, specified that Keen High could not delegate or subcontract without Fuhu's approval. (Id. at ¶ 30.) Fuhu also alleges that Keen High once again subcontracted with Wistron without Fuhu's approval and knowing violation of the new Dreamtab agreement. (Id. at ¶¶ 31-32.)

Keen High filed for bankruptcy in 2014. Wistron, in an attempt to collect for tablets produced on Keen High's behalf, sought Fuhu's assistance in obtaining an assignment of payment obligations due to Keen High from distributor D&H. (Id. at ¶¶ 36-37.) Fuhu alleges that by mid-October 2014, Wistron and Fuhu entered an oral agreement that Fuhu would assist Wistron in its efforts to obtain the assignment in exchange for Wistron's agreement to fulfill all of Keen High's outstanding obligations, including full RMA support. (Id. at ¶ 38.) Fuhu further alleges that its efforts were successful, and that on October 22, 2014, Wistron, Keen High, and D&H entered a written agreement whereby Keen High assigned its payment rights to Wistron and Wistron agreed to take responsibility for RMA service. (Id. at ¶ 40.)

Shortly after the October 22 agreement, Fuhu discovered the DreamTabs were defective, providing little to no internet connectivity. (Compl. ¶ 41.) Fuhu therefore instructed D&H to quarantine 35,000 DreamTabs. (Id. at ¶ 41.) In October or November of 2014, Fuhu entered into an oral agreement with Wistron to purchase the remaining inventory of DreamTabs that Wistron had already manufactured in exchange for Wistron promise to take back the 35,000 quarantined Dreamtabs, fix the internet connectivity issue, and provide full RMA support for all other Wistron-

3

manufactured DreamTabs. (Id. at ¶¶ 42-43.)  The parties then signed a written "Interim Agreement," which stated that Fuhu would purchase 53,760 DreamTabs from Wistron for $119 each. (Id. at ¶ 44.)

Soon after entering the Interim Agreement, Fuhu discovered that Wistron had failed to perform any RMA support previously promised, dating back to March 2014. (Id. at ¶ 45, Ex. E, 8.)  In addition, Fuhu alleges Wistron "allowed" 35,000 quarantined DreamTabs to ship from D&H to retailers, without having fixed the internet connectivity issues. (Complaint, ¶ 48.)

B.   Procedural History

On January 29, 2015, D&H filed a complaint against Fuhu in California state court ("the D&H action"), alleging Fuhu breached the 2012 Distribution Agreement. (RJN, Ex. 1.)  The crux of D&H's amended complaint is that Fuhu notified D&H on December 30, 2014 that D&H would no longer be allowed to make sales of Fuhu products to Fuhu customers, refused to pay outstanding invoices owed to D&H, and refused to buy back excess inventory from D&H. (Complaint, ¶ 20.) In response to the Amended Complaint, Fuhu filed a cross-complaint and an answer, asserting fourteen affirmative defenses. (RJN, Ex. 3.)  Fuhu's affirmative defenses and cross-complaint, which alleges seventeen causes of action, are based upon Fuhu's claims that (1) D&H forced Keen High into bankruptcy by failing to make timely payments to Keen High, thus depriving Fuhu of its manufacturer and RMA support needed for its products, (2) D&H withheld payment due to Fuhu under the 2012 Distribution Agreement, and (3) D&H intentionally distributed

1  defective Dreamtabs after agreeing to quarantine them in its
2  warehouse. (Id.)
3      In May 2015, Wistron and Fuhu engaged in a series of
4  communications in an attempt to resolve a claim by Wistron that
5  Fuhu owes $6.3 million to Wistron for goods manufactured pursuant
6  to the Interim Agreement. (Decl. Lubic, ¶ 2.)  On Tuesday, June 9,
7  2015, Wistron wrote in an email to Fuhu, "We have been instructed
8  to take legal action if we have not executed a forbearance
9  agreement by Thursday." (Decl. Lubic, Ex. B, 2.)  On June 10,
10 2015, Fuhu sent a counter-proposal to Wistron. (Decl. Lubic, Ex.
11 C, 2.) In response, Wistron asked to meet with Fuhu in person on
12 Thursday, June 11, 2015. (Decl. Lubic, Ex. D, 2.)  Although Fuhu
13 appears to have agreed to a June 11 meeting, Fuhu did not attend
14 the meeting, and instead filed the instant Complaint against
15 Wistron in this court.  (Decl. Lubic ¶ 7.)  Fuhu's Complaint
16 alleges breach of contract, violations of California's Unfair
17 Competition Law (Bus. & Prof. Code § 17200), intentional
18 interference with contractual relations, and fraud.
19     On September 4, 2015, Wistron filed a state court action
20 against Fuhu for breach of contract and misrepresentation. (RJN,
21 Ex. 7.)  Wistron now moves to dismiss or stay this action in favor
22 of state court proceedings.[1]
23 **II.  Discussion**
24     Under the Colorado River doctrine, a concurrent state
25 proceeding may permit the district court to dismiss a concurrent

---

[1] Although Wistron purportedly moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), Wistron makes no argument regarding subject matter jurisdiction.  Neither party appears to dispute that this court clearly has diversity jurisdiction over this matter.

5

federal suit "for reasons of wise judicial administration." Colorado River Water Conservation District v. United States, 424 U.S. 800, 818 (1976). In deciding whether the circumstances of a particular case warrant a Colorado River stay or dismissal, courts must consider eight factors:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

Holder v. Holder, 305 F.3d 854, 870 (9th Cir. 2002). These factors are subject to a flexible balancing test, in which one factor may be given more weight than another depending on the circumstances of the case, and "with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983); See also Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co., 843 F.2d 1253, 1257 (9th Cir. 1988) ("These factors are to be applied in a pragmatic and flexible way, as party of a balancing process rather than as a mechanical checklist.") (internal quotation marks and citation omitted). Other factors not delineated in Colorado River may also be relevant. Am. Int'l Underwriters, 843 F.2d at 1257.

    Here, the first two factors are of little consequence. This case does not involve a dispute over a specific piece of real property, and both the state court and the federal court

proceedings were filed in Los Angeles. The court addresses the remaining factors in turn.

### 1. Piecemeal Litigation

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." Am. Int'l Underwriters, 843 F.2d at 1258. Although Fuhu argues that the existence of a "parallel" action in state court is a "threshold requirement" for Colorado River abstention, such is not the case in the Ninth Circuit. (Opposition at 9.) As Fuhu appears to acknowledge, "exact parallelism" is not required. Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989). "It is enough if the two proceedings are substantially similar." Id. (internal quotation marks omitted).

Here, the issues raised in the two pending state court proceedings are substantially similar to those before this court. First, Fuhu does not dispute that Wistron's state action will necessarily involve the same facts as the instant suit. Indeed, once affirmative defenses and counterclaims are fully pleaded, the two actions are likely to be identical.[2] Even focusing solely on the first-filed D&H action, the proceedings are sufficiently similar to weigh in favor of abstention. Much of this case revolves around Keen High's bankruptcy and the resulting harm to Fuhu, including loss of manufacturing and RMA support services, and the release of 35,000 defective Dreamtabs from quarantine. Here, Fuhu alleges that Wistron is culpable for Keen High's

---

[2] It does not appear that Fuhu, as a citizen of California, could have, or will be able to, remove the Wistron case to this court. See 28 U.S.C. 1441(b)(2).

7

bankruptcy and the resulting harm, and that Wistron "allowed" the defective Dreamtabs to ship to retailers.  At the same time, however, Fuhu's affirmative defenses and counterclaims in the D&H action in state are premised on the contention that D&H caused Keen High's bankruptcy and its aftermath, and that D&H deliberately released the defective Dreamtabs from quarantine.

Simultaneous litigation of the same liability questions both here and in state court would not merely hinder judicial economy, but could result in conflicting rulings, which might "jeopardize the appearance and actuality of justice."  Freed v. J.P. Morgan Chase Bank, N.A., 756 F.3d 1013, 1022 (7th Cir. 2014).  Many of the same witnesses would likely participate in both cases, raising the possibility of inconsistent testimony or credibility determinations.  Indeed, by pursuing the same claims against different parties in multiple forums, Fuhu is, to some extent, inviting inconsistent outcomes or seeking double recovery from both D&H and Wistron for the same damages.  The court is not persuaded by Fuhu's assurance that inconsistent rulings pose little danger "because the first-rendered judgment will be res judicata in the other proceeding." (Opp. at 15.)  First, although that argument might be true with respect to the Wistron case, it has no bearing on the substantially similar issues in the D&H case, as there appears to be no privity between D&H and Wistron. See, e.g. iCore Global, LLC v. Millennium Commercial Advisors, LLC, No. C-14-3393 EMC, 2015 WL 179401 *4 (N.D. Cal. Jan. 14, 2015).  Second, to the extent Fuhu suggests that this case should proceed simultaneously with the other cases until such time as a first-rendered judgment makes res judicata of the other

8

proceedings, that course of action would be exorbitantly wasteful of judicial resources.[3]

In light of these particular issues, the circumstances here raise a special concern about piecemeal litigation, and weigh in favor of abstention.

**2.  Order of Jurisdiction**

Next, the court considers the order in which the forums obtained jurisdiction.  The Supreme Court has stated that courts must apply this factor "in a pragmatic, flexible manner with a view to the realities of the case at hand."  R.R. Street & Co. v. Transport Ins. Co., 656 F.3d 966, 980 (9th Cir. 2011) (quoting Moses H. Cone, 460 U.S. at 21, (giving little weight to the dates of filing when the same relative progress had been made in the state and federal proceedings)).  Thus, order of jurisdiction should not be measured exclusively by which case was filed first.  Moses H. Cone, 460 U.S. at 21.  Priority should also be measured by the progress made in the two actions.  Id.  The Supreme Court applied this approach in Colorado River, where the federal action was filed first, but there were no proceedings in the district court, other than the filing of the complaint, prior to the motion to dismiss. Id. (citing Colorado River, 424 U.S. at 820).

Here, D&H first filed the state action against Fuhu, then Fuhu filed this federal action against Wistron.  Nearly three months later, Wistron filed in state court against Fuhu.  Because

---

[3] To the extent that resolution of the D&H matter would not resolve every issue before this court, that factor weighs against abstention.  As Fuhu appears to acknowledge, however, resolution of the pending Wistron action in state court would resolve all of the issues here.

all three cases are intertwined, the court considers the D&H state action the first filed action. The instant case remains in its early stages, while a lengthy attachment motion has already been adjudicated in state court. Because D&H filed an amended complaint on June 11, 2015, the state action and federal action are at relatively similar stages of proceedings. Thus, the order of filing and relative progress of the various actions weigh against the exercise of jurisdiction.

### 3.  Source of Law

If this case presented a federal question, this factor would weigh heavily in favor of jurisdiction. R.R. Street & Co., 656 F.3d at 980. It does not. The routine state law questions at issue here have little bearing on the abstention analysis. Id.

### 4.  Adequacy of State Court

Next, the court must consider whether the state court proceedings can adequately protect the rights of the federal litigants. Fuhu does not dispute that the state court is perfectly capable in this regard. However, "[l]ike source of law, . . . this factor 'is more important when it weighs in favor of federal jurisdiction.'" Id. at 981 (quoting Travelers, 914 F.2d at 1370). Here, it is clear that the state court has the authority and ability to address the issues in these cases, and this factor does not weigh against abstention.

### 5.  Forum Shopping

If it is apparent that a federal litigant is engaged in forum shopping, this factor will weigh in favor of dismissal. See R.R. Street & Co., 656 F.3d at 981. Although a preemptive filing in state or federal court is not inherently suspect, "courts may

10

consider the vexatious or reactive nature of either the federal or the state litigation." Id.

Fuhu did not file this case until after D&H filed the D&H action in state court, and until after Wistron threatened legal action and implicitly rejected Fuhu's counterproposal. Wistron's e-mail to Fuhu on Tuesday, June 9, 2015, clearly stated that Wistron would take legal action if an agreement was not reached by Thursday, June 11, 2015. In response to Fuhu's June 10 counterproposal, Wistron proposed a face-to-face meeting on Thursday, June 11. Instead of appearing for that meeting, Fuhu filed this action on the day the meeting was to have occurred. Fuhu does not dispute that it filed this suit in anticipation of Wistron's threatened state court action.[4] Although the anticipatory nature of a suit for purposes of the "first to file" rule is technically distinct from Colorado River questions, Fuhu's course of action strikes the court as reactive and suggests an attempt at forum shopping, particularly given the fact that, as a California citizen, Fuhu would not have been able to remove Wistron's impending suit from state court to this court. 28 U.S.C. 1441(b)(2). This factor weighs in favor of abstention.

**IV. Conclusion**

Although the balance of the court's Colorado River inquiry begins heavily weighted in favor of jurisdiction, nearly all of

---

[4] The parties discuss this issue largely in relation to Wistron's alternative argument that the court should dismiss this action under the "first to file" rule. See Alltrade v. Uniweld Products, Inc., 946 F.2d 622, 628 (9th Cir. 1991); Pacesetter Systems, Inc. V. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982).

11

the relevant factors tip, if in either direction, toward abstention. Accordingly, Wistron's Motion to Dismiss is GRANTED.

IT IS SO ORDERED.

Dated: May 18, 2016

DEAN D. PREGERSON
United States District Judge